AIG/AIU INSURANCE COMPANY,
Appellant,

v.

SOUTH AKERS MINING COMPANY, LLC; Ronnie Charles, Deceased, Tammy Charles, Administratrix; Hon. Donna H. Terry, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2005–SC–0178–WC.

Supreme Court of Kentucky.

Jan. 19, 2006.

As Modified on Denial of Rehearing
June 15, 2006.

Dennis R. McGlincy, Louisville, Counsel for Appellant.

Sherri P. Brown, Ferreri & Fogle, Lexington, Counsel for Appellee, South Akers Mining Company, LLC.

Miller Kent Carter, Pikeville, Counsel for Appellees, Ronnie Charles, Deceased, and Tammy Charles, Administratrix.

## OPINION OF THE COURT

On September 16, 1999, Ronnie Charles was killed in a roof fall accident while working for the defendant-employer as an underground coal miner. It was later found that the accident resulted from the employer's intentional violation of several mine safety statutes and regulations and that his surviving spouse and minor child were entitled to increased benefits under KRS 342.165(1). Affirming decisions by an Administrative Law Judge and the Workers' Compensation Board, the Court of Appeals determined that the employer's workers' compensation insurance carrier was liable for the increased benefits that KRS 342.165(1) authorized although a term in the insurance contract excluded such coverage. We affirm.

Appealing, the insurance carrier relies upon the terms of its contract with the defendant-employer. It argues that the parties had the right to contract freely and that there is no conflict between the terms of their agreement and the public policy embodied in KRS 342.165(1). The carrier maintains that the purpose of the statute is to promote workplace safety by penalizing employers for safety violations. Therefore, sums paid under the statute are properly viewed as being a penalty for which the employer is liable rather than compensation to the injured worker or his surviving dependents.

The contract of insurance provided, in pertinent part, as follows:

F. Payments You Must Make

You are responsible for any payment in excess of the benefits regularly provided by the workers['] compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers['] compensation law.

If we make any payments in excess of the benefits regularly provided by the workers['] compensation law on your behalf, you will reimburse us promptly.

Workers' compensation is statutory. Among the purposes of Chapter 342 is to assure that the costs of production include compensation to the victims of work-related accidents, thereby enabling them to meet their ongoing needs for the essentials of life and preventing them from becoming dependent on public assistance. Consistent with this purpose, KRS 342.340(1) requires every employer that is subject to Chapter 342 to insure its "liability for compensation" with an authorized carrier or to furnish proof of its financial ability to self-insure. KRS 342.365 requires that a carrier issuing a policy against liability under Chapter 342 must agree to pay promptly "all benefits conferred by this chapter and all installments of the compensation that may be awarded or agreed upon" and that the carrier's agreement "shall be construed to be a direct promise by the insurer to the person entitled to compensation, enforceable in his name." KRS 342.375 provides that every policy or contract of insurance "shall cover the entire liability of the employer for compensation to each employee subject to this chapter."[1] It permits employers to have separate policies for specific locations, provided that the liability to each employee is secured and no employee loses any benefit rights.

Although freedom of contract is a basic right, the legislature has determined that an employer's entire liability for workers' compensation benefits must be secured as a matter of public policy. KRS 342.340(1); KRS 342.365; and KRS 342.375. Therefore, workers' compensation insurance policies must comply with Chapter 342 by covering the employer's entire liability, including the liability imposed by KRS 342.165(1). *See Beacon Insurance Company of America v. State Farm Mutual Insurance Company*, 795 S.W.2d 62 (Ky. 1990). This assures that injured workers or their surviving dependents will receive all of the benefits to which they are entitled.

By their very nature, workers' compensation acts involve trade-offs by employers and workers. By securing the

1. KRS 342.165(1) is not among the exceptions to coverage.

payment of compensation and operating under Chapter 342, employers avoid common law liability for the effects of their tortious conduct unless it involves "willful and unprovoked physical aggression" by an employee, officer, or director. KRS 342.690(1); *Shamrock Coal Co. v. Maricle*, 5 S.W.3d 130 (Ky.1999). Chapter 342 holds an employer liable for medical benefits and limited amounts of income benefits but relieves the employer of liability for pain and suffering and for punitive damages even in instances where the accident causing an injury results from the employer's intentional safety violation. An injured worker foregoes the right to damages in exchange for the right to receive statutorily-determined compensation without regard to fault.

As defined in KRS 342.0011(14) "compensation" consists of income benefits and medical and related benefits. Chapter 342 provides for income benefits in amounts that do not replace all of the injured worker's lost wages.[2] In instances where the accident resulting in an injury is due to an employer's intentional safety violation, the 1999 version of KRS 342.165(1) provides for a 15% increase in "the compensation for which the employer would otherwise have been liable under this chapter." If a safety violation by the worker contributed to causing the accident, compensation is decreased by 15%. The provision gives employers and workers a financial incentive to follow safety rules without thwarting the purpose of the Act by subjecting them to the potentially disastrous consequences of removing claims involving intentional violations from its coverage. *See* Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law*, § 105.08[1].

Although KRS 342.165(1) authorizes what has commonly been referred to as a safety penalty and although the party that pays more or receives less is likely to view the provision as being a penalty, the legislature did not designate the increase or decrease as such or include it in KRS 342.990. Nor does KRS 342.165(1) imply that the legislature viewed the increase or decrease as being the equivalent of punitive damages. It authorizes an increase or decrease in compensation if an "intentional failure" to comply with a safety regulation contributes to causing an accident. Notwithstanding the use of the word "penalty" as a metaphor in Apex *Mining v. Blankenship*, 918 S.W.2d 225 (Ky.1996), *Whittaker v. McClure*, 891 S.W.2d 80, 84 (Ky.1995), and *Ernst Simpson Construction Co. v. Conn*, 625 S.W.2d 850, 851 (Ky.1981), it implies that the increase or decrease serves to compensate the party that benefits from it for the effects of the opponent's misconduct. Therefore, the employer's insurance carrier is liable for any increase in benefits under KRS 342.165(1) despite a contractual term to the contrary. Consistent with the principle that workers' compensation benefits are a cost of production, the carrier is free to consider the amount of compensation it has paid on an employer's behalf when assessing the risk and deciding whether to continue to offer coverage after the policy expires and, if so, at what rate.

The decision of the Court of Appeals is affirmed.

All concur.

2. Income benefits are limited to 66 2/3% of the individual's average weekly wage up to 75% (partial disability) or 100% (total disability) of the state's average weekly wage.